# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT HEYWOOD, | ) | CASE NO. 1:17-cv-01806 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Robert Heywood (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying his applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. Procedural History

On January 19, 2014, Plaintiff filed his applications for POD and DIB, alleging a disability onset date of June 1, 2012. (Transcript ("Tr.") 227-233). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge

("ALJ"). (Tr. 163-178). Plaintiff participated in the hearing on December 16, 2015, was

represented by counsel, and testified. (Tr. 96-134). A vocational expert ("VE") also participated

and testified. *Id*. On April 13, 2016, the ALJ found Plaintiff not disabled. (Tr. 10-19).

On June 26, 2017, the Appeals Council declined to review the ALJ's decision, and the

ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On August 29, 2017,

Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties

have completed briefing in this case. (R. 13 & 14). Plaintiff asserts the following assignment of

error: (1) the ALJ's decision is not supported by substantial evidence because the ALJ did not

accord great weight to his treating physician's opinion. (R. 13).

## II. Evidence[1]

### A. Relevant Medical Evidence[2]

#### 1. Treatment Records

On June 20, 2012, Plaintiff underwent a right total hip replacement performed by

Conjeevaram Maheshwer, M.D. (Tr. 334).

On February 20, 2014, an x-ray of Plaintiff's right hand showed moderate to marked

degenerative change at the base of the first metacarpal, with the articulations of the trapezoid and

Trapezium; there was "bony density adjacent to the proximal aspect of the first metacarpal either

related to remote trauma of one of the carpals or perhaps a dystrophic ossification," — findings

---

[1] The court foregoes a summary of the hearing testimony, as Plaintiff has not challenged the
ALJ's credibility determination or the ALJ's reliance on the VE's testimony.

[2] The recitation of the evidence is not intended to be exhaustive. It includes only those portions
of the record cited by the parties in their briefs and also deemed relevant by the court to the
assignment of error raised. The court focuses primarily on the treatment of physician Truvy
Cohen, M.D., whose opinion Plaintiff claims the ALJ improperly rejected. Plaintiff's brief does
not recite much of Dr. Cohen's treatment, however.

that were not present in a 2008 x-ray. (Tr. 548). There was also a mild degenerative change at the distal articulations of the scaphoid, and deformity of the distal aspect of the proximal phalanx of the fourth digit with degenerative change at the associated joint. *Id*.

On April 28, 2014, an x-ray of Plaintiff's right hip revealed "no specific abnormality associated with right hip replacement." (Tr. 547).

On July 31, 2014, Plaintiff asserted that "[h]e was doing we[ll] postoperatively until he returned to work as a heavy laborer. He has significant pain in the hip down the thigh whenever he needs to do work which involves carrying extremely heavy objects which is the majority of his work, Pain subsides otherwise." (Tr. 644). Resident Eugene Tsai offered physical therapy but Plaintiff declined, and Plaintiff was instructed to "continue a home exercise program and low impact activities such as elliptical, bicycling, and swimming." *Id*. Plaintiff was advised to "avoid heavy labor activities." *Id*. An x-ray of his right hip showed "hardware in place with good alignment." *Id*. On examination, Plaintiff had full range of motion in his hip, and was able to straight leg raise. *Id*.

On January 6, 2015, Truvy Cohen, M.D., a physician from the VA, wrote a letter stating that Plaintiff was examined that day and was temporarily unable to work for at least the next six months due to his right hip replacement and degenerative arthritis in his hands. (Tr. 628).

On March 24, 2015, Plaintiff met with Dr. Ashraf Youssef for an orthopedic surgery consultation. (Tr. 694). Dr. Youssef noted that "[s]erial x-rays of Plaintiff's have shown stable implant with no obvious signs of loosening." *Id*. Upon examination, Plaintiff had full range of motion, negative straight leg raise, and 5/5 strength in his right hip. *Id*. Dr. Youssef ordered a bone scan. *Id*.

On April 29, 2015, vascular flow imaging revealed "[n]ormal flow without any hyperemia

… to the right hip prosthesis region. Delayed images demonstrate minimal increased radiotracer activity around the acetabular component of the prosthesis." (Tr. 662-663). However, "a small moderate increased radiotracer focus [was] noted at the tip of the prosthesis in the femoral shaft." (Tr. 663). The radiologist recommended a clinical evaluation. *Id.*

On May 28, 2015, Plaintiff reported to the ER complaining of left hip pain starting the previous day after he mowed the lawn. (Tr. 759). Plaintiff was ambulatory with a severe limp, but he had a steady gait without an assistive device. (Tr. 760). On musculoskeletal examination, there was "slight, diffuse tenderness across the patient's lower back region;" "no discoloration, edema, crepitus, instability, step off," "[n]o spinous process tenderness throughout L-S region," straight leg raises were negative bilaterally, "[n]o foot drop," and steady gait and normal station. (Tr. 762). Although Plaintiff identified his left hip and buttocks region as the source of his pain, Plaintiff had range of motion of the left hip without pain and there was minimal tenderness. *Id.* Plaintiff was diagnosed with left hip pain and sciatica. (Tr. 763). The impression was mild degenerative changes at the lower lumbar spine and left hip joint, and right total hip prosthesis was in place. *Id.*

### 2.  Medical Opinions Concerning Plaintiff's Functional Limitations

On April 17, 2014, Plaintiff underwent a consultative internal medicine examination with Hasan Assaf, M.D., at the referral of the state agency. (Tr. 529-533). Plaintiff stated that following his right hip replacement, he returned to work in construction, but started having pain again in his right hip. *Id.* Plaintiff rated his pain as 10/10 with activities such as standing and walking. (Tr. 529). He had not seen any physician recently for his pain and used over-the-counter Advil for his pain. *Id.* On examination, Dr. Assaf indicated that Plaintiff "appeared to be in no acute distress. Gait normal. Can walk on heels and toes without difficulty. Squat was limited to

4

70 degrees because of right hip pain, according to the claimant. Stance normal. Used no assistive devices. Needed no help changing for exam or getting on and off exam table. Able to rise from chair without difficulty." (Tr. 531). Dr. Assaf opined that Plaintiff had "moderate limitations in activities requiring prolonged standing, walking, and squatting." (Tr. 533). Dr. Assaf performed manual muscle testing on Plaintiff and noted 5/5 hip flexors and extension bilaterally (Tr. 534), and normal range of motion in the hip bilaterally on flexion, extension, abduction, adduction, and internal/external rotation. (Tr. 537).

On April 29, 2014, state agency physician Stephen Sutherland, M.D., reviewed Plaintiff's medical records and opined that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally, stand/walk for six hours and sit for six hours each in an 8-hour workday, and had limited ability to push/pull with the lower extremities. (Tr. 142-144). He said Plaintiff could never climb ladders/ropes/scaffolds and occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 142-143). Dr. Sutherland opined that Plaintiff had unlimited ability to reach, handle, and feel, but was limited in fine manipulation of the right hand. (Tr. 143).

On July 25, 2014, state agency physician Gerald Klyop, M.D., reviewed Plaintiff's medical records and assigned Plaintiff the same restrictions as Dr. Sutherland. (Tr. 153-155).

On January 4, 2016, Dr. Cohen wrote a letter stating that she was "familiar with [Plaintiff's] medical history and medical impairments although his Total Hip Replacement was not performed within the Veteran's system." (Tr. 784). She stated that she found Plaintiff's "complaints of pain to be reasonable," and "[g]iven his condition of degenerative joint disease of both hips, it is acceptable to assume standing and walking more than two hours in an eight-hour shift will significantly increase his pain as well as lifting more than ten pounds." *Id*. She advised that Plaintiff should not "stand or walk more than two hours a day or lift more than ten pounds."

*Id*.

On the same day, Dr. Cohen also completed a check-the-box physical RFC assessment (Tr. 785-786). In the assessment, she opined that Plaintiff could lift/carry 20 pounds from 1/3 to 2/3 of an 8-hour workday and 50 pounds no more than 1/3 of an 8-hour workday. (Tr. 785). Dr. Cohen also indicated that Plaintiff could stand/walk for about two hours and sit for about six hours in an 8-hour day. *Id*. She indicated Plaintiff needed to alternate between sitting, standing, or walking every 30 minutes, yet could stand for 90 minutes before needing to change position. *Id*. Dr. Cohen stated that Plaintiff did not need to lie down during a work shift. *Id*. She indicated that the above-mentioned restrictions were supported by multiple joint pain due to osteoarthritis and joint replacement. (Tr. 786). She opined that Plaintiff could reach (including overhead) less than occasionally; he could never handle, finger, or feel; and, he could occasionally push/pull. *Id*. Dr. Cohen opined that Plaintiff would miss 2-3 days of work a month due to his impairments or treatment, and that pain would cause Plaintiff to be off-task more than 10% of the day. *Id*. (Tr. 786). She said these limitations were based on Plaintiff's joint pain (Tr. 786).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage

process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant last met the insured status requirements of the Social Security Act on September 30, 2014 (Ex. 3D).

2.  The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of October 1, 2013 through his date last insured of September 30, 2014 (20 CFR 404.1571 *et seq*.).

3.  Through the date last insured, the claimant had the following severe impairment: osteoarthritis in the right hand and left hip with total hip

replacement (20 C.F.R. § 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except was limited to occasional foot controls bilaterally; should never climb any ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; all other posturals can also be performed on an occasional basis. He was limited in the use of his right hand to fingering frequently and he is right-handed; and must avoid working in unprotected heights and operating dangerous equipment such as hammer jacks and power saws.

6.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on *** 1963 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10.   Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. § 404.1569 and 404.1569(a)).

11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from October 1, 2013, the amended alleged onset date, through September 30, 2014, the date last insured (20 CFR 404.1520(g)).

(Tr. 10-19).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is

supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id*. However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignment of Error**

Plaintiff asserts that the ALJ erred by rejecting the opinions of one his treating physicians, Dr. Cohen, as set forth in a January 2016 physical residual capacity checklist questionnaire. (R. 10, PageID# 835-837). The Commissioner does not challenge the assertion that Dr. Cohen was a treating source when the doctor completed the questionnaire. (R. 14). The Commissioner, however, argues that the ALJ properly weighed Dr. Cohen's opinion. *Id*.

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240

(6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ

does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ addressed Dr. Cohen's opinions as follows:

> On January 4, 2016, Truvy Cohen, M.D., a treating physician, opined that the claimant should not stand or walk more than two hours a day or lift more than ten pounds. He[3] also completed a residual functional capacity form that indicated the claimant is limited to medium work, would have to shift positions every 30 minutes, could stand for 90 minutes before needing to change position, and would have further manipulative restrictions. Additionally, he opined that the claimant would be off task more than 10 percent of the time and that he would be expected to miss work two to three times per week (Ex. 10F). This opinion is given little weight as it contradicts itself. Dr. Cohen's letter suggests the claimant would be limited to sedentary work; however, his residual functional capacity form that was completed at the same time limits the claimant to medium work. Further, Dr. Cohen does not provide any basis or rationale for his opinion that the claimant would be off task 10 percent of the time and would be expected to miss two to three days per week. Additionally, Dr. Cohen is not a specialist and his opinion appears to have relied upon the claimant's reports of pain as "being reasonable" and appears to be based, at least in part, upon asserted assumptions rather than medical findings.

> On January 6, 2015, Dr. Cohen opined that the claimant was temporarily unable to work for at least the next six months (Ex. 7F). The undersigned notes that an opinion on whether an individual is disabled goes to an issue reserved to the

---

3  The ALJ incorrectly referred to Dr. Cohen by the masculine pronoun.

Commissioner and therefore cannot be given special significance; however, such an opinion should still be considered in the assessment of the claimant's residual functional capacity (20 CFR 404.1527(e); SSR 96-Sp). This opinion is has [sic] been superseded by Dr. Cohen's January 4, 2016, opinion and therefore has not been assigned any weight.

(Tr. 16-17).

Plaintiff specifically takes issue with the ALJ's decision not to ascribe controlling weight to Dr. Cohen's opinion that Plaintiff cannot stand/walk for more than two hours in an 8-hour workday. (R. 13, PageID# 847-848). Plaintiff contends that Dr. Cohen did not contradict herself with respect to the "main issue at hand (limitations in standing and walking)." (R. 13, PageID# 850). While Plaintiff does not challenge the ALJ's determination that Dr. Cohen is not a specialist, he argues that this fact is not a "good reason" for discounting the weight ascribed to her opinion. (R. 13, PageID# 851). Finally, Plaintiff contends that "there is no basis for the ALJ'[s] opinion that Dr. Cohen's opinion is solely based on reports from Plaintiff and assumptions." *Id.*

As Plaintiff limits his argument to the ALJ's rejection of Dr. Cohen's assessed standing/walking limitations, the court restricts its analysis to this specific issue. The court, however, does not find Plaintiff's arguments meritorious. Although Dr. Cohen completed the physical RFC form by circling a restriction for a maximum ability of "about 2 hrs" walking during an 8-hour workday, Dr. Cohen also indicated in the same form that Plaintiff could lift/carry 20 pounds *frequently* and 50 pounds occasionally. (Tr. 785) (emphasis added). The form clearly defines "frequently" as being from 1/3 to 2/3 of an 8-hour workday (i.e. from 2 to 6 hours). The form is consistent with Social Security Ruling ("SSR") 83-10 in this regard, which states that: "'Frequent' means occurring from one-third to two-thirds of the time" 1983 WL 31251 at *6 (S.S.A. 1983). "Since frequent lifting or carrying requires being on one's feet up to

two-thirds of a workday," both the full range of light and medium work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id*. The ALJ's conclusion that Dr. Cohen "contradicts herself" is clearly supported, even though the ALJ could have provided a detailed explanation. In addition, Dr. Cohen indicated Plaintiff could only stand about two hours in an eight hour day, but on the other hand, she opined that Plaintiff could frequently carry 20 pounds, which necessarily involves the ability to stand/walk up to six hours (up to 2/3 of the workday). It was not unreasonable for the ALJ to be troubled by such an inconsistency, and it would have been pure speculation for the ALJ to conclude that Dr. Cohen intended one limitation but not the other.

Plaintiff's brief appears to assert that a letter written by Dr. Cohen on the same day the form was completed clarifies the issue, as Plaintiff suggests the letter again limits him to no more than two hours of standing/walking. (Tr. 784). The ALJ, however, found the express language of the letter troubling, wherein Dr. Cohen wrote:

> I find [Plaintiff's] complaints of pain to be reasonable. Given his condition of degenerative joint disease of both hips, it is acceptable to assume standing and walking more than two hours in an eight-hour shift will significantly increase his pain as well as lifting more than ten pounds.

(Tr. 784).

First, the letter creates yet another inconsistency, an apparent restriction to ten pounds of lifting in stark contrast to the opinion rendered the same day that Plaintiff could lift 50 pounds occasionally and 20 pounds frequently. In addition, the ALJ identified reasonable concerns that Dr. Cohen's opinion was based, "at least in part," upon Plaintiff's subjective reports of pain and "upon asserted assumptions rather than medical findings[,]" because Dr. Cohen's letter indicated Plaintiff's "complaints of pain [were] reasonable" and it was "acceptable to assume" that a two

13

hour standing limitation was justified. (Tr. 784). While the precise import of Dr. Cohen's letter may be subject to debate, the ALJ's interpretation of the letter—that Dr. Cohen based her opinion, at least in part, on Plaintiff's subjective complaints of pain—is a reasonable interpretation even if it is not the only possible interpretation.

A number of courts have found that a physician's opinion, "premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded where those complaints have been properly discounted." *Reinertson v. Barnhart*, 127 Fed. App'x 285, 290 (9th Cir. 2005) (internal quotation marks omitted) (*citing Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999)); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (finding that ALJ did not err by disregarding the opinion of a treating physician where the limitation in question appeared to be based not upon his own medical conclusion, but upon the conclusion of a different doctor and the claimant's self-assessment). In *Tate v. Comm'r of Soc. Sec.*, the Sixth Circuit found no error in an ALJ's decision to discount a treating doctor's opinion when there were substantial gaps in treatment and the doctor's assessment appeared to be based on claimant's subjective complaints without sufficient support from objective clinical or neurological findings. 467 Fed. Appx 431, 433 (6th Cir. 2012); *see also Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 156 (6th Cir. 2009) (finding treating physician's opinion was not entitled to deference where it was based on claimant's subjective complaints); *accord Rogers v. Astrue*, 2012 WL 639473 at *4 ("Simply recording Plaintiff's subjective complaints is not objective medical data....") In the present case, because the ALJ determined that Plaintiff's alleged limitations were not entirely credible—a determination that is entitled to considerable deference and one the Plaintiff has not challenged—it was not unreasonable for the ALJ to discount a medical source opinion that relied upon Plaintiff's self-reports of his symptoms.

Finally, the court finds nothing improper in the ALJ considering Dr. Cohen's lack of specialization when weighing her opinion. To the contrary, the regulations concerning the evaluation of opinion evidence, for claims filed before March 27, 2017, specifically lists "specialization" as one of the factors to consider. 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.") The court need not consider whether the lack of specialization, on its own, would constitute a good reason for rejecting a treating source opinion, because Dr. Cohen's lack of specialization was not the sole basis for the ALJ rejecting the standing/walking limitation. The court finds the ALJ gave sufficiently good reasons for rejecting the standing/walking limitation assessed by Dr. Cohen. Therefore, Plaintiff's sole assignment of error is not well taken.[4]

---

[4] Other than statements that Plaintiff suffers from pain due to osteoarthritis and a joint replacement (essentially no more than a diagnosis), Dr. Cohen does not explain the limitations assessed in her questionnaire. Though not argued by the Commissioner, the Sixth Circuit and numerous district courts have found that failure to give good reasons for rejecting a check-box/checklist opinion, which is unaccompanied by any explanation, is harmless error. *Hernandez v. Commissioner*, 644 Fed. App'x 468, 474 (6th Cir. Mar. 17, 2016) (finding that such evidence was "'weak evidence' at best' and meets our patently deficient standard") (citations omitted); *accord Shepard v. Commissioner*, 705 Fed. App'x 435 (6th Cir. Sept. 26, 2017); *Toll v. Commissioner*, No. 1:16CV705, 2017 WL 1017821 at *4 (W.D. Mich. Mar. 16, 2017) ("even if the ALJ failed to provide good reasons" for assigning little weight to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis ); *Denham v. Commissioner*, No. 2:15CV2425, 2016 WL 4500713, at *3 (S.D. Ohio Aug. 29, 2016) (magistrate judge "correctly found that any error in the ALJ's consideration of Lewis' evaluation was harmless because the check-box form was so patently deficient that the Commissioner could not possibly credit it"). Because the court recommends finding that the ALJ gave sufficiently good reasons for not adopting Dr. Cohen's opinion, it has declined to offer an opinion as to whether Dr. Cohen's checklist opinion is so patently deficient that a violation of the treating physician rule would be deemed harmless error.

## IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: July 10 2018

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.   *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).